# United States Bankruptcy Court
# District of Massachusetts

In re
JAMES J. LATINI AND
ELIZABETH N. LATINI,
    Debtors

Chapter 7
Case No. 04-12572-JNF

VICTOR VONER,
    Plaintiff
v.
WILLIAM G. BILLINGHAM, TRUSTEE
OF THE ESTATE OF THE BANKRUPTCY
ESTATE OF JAMES J. LATINI,
    Defendant

Adv. P. No. 05-1014

## MEMORANDUM

### I. INTRODUCTION

Several matters are before the Court: 1) the Chapter 7 Trustee's Motion to Dismiss for Failure to State a Claim upon which Relief May Be Granted (the "Motion to Dismiss") and Objections to the Motion to Dismiss filed by Victor Voner and Rockland Trust Company; and 2) the Motion of Rockland Trust Company for Leave to Intervene as a Plaintiff in the Adversary Proceeding (the "Motion to Intervene") and Objections to the Motion to Intervene filed by Victor Voner and the Chapter 7 Trustee of the estate of James

1

Latini (the "Debtor"), and Elizabeth Latini (collectively, the "Debtors"). The Court heard the Motions and Objections on May 4, 2005 and took the matters under advisement.

The facts necessary to decide the Motions, while complicated, are not in dispute. None of the parties requested an evidentiary hearing. Upon consideration of the Complaint and the exhibits attached to it, the Court shall treat the Trustee's Motion to Dismiss as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012; *see also* Hickey v. Fireside Inn Motel, Inc. (In re Scionti), 40 B.R. 947 (Bankr. D. Mass. 1984). The Court now makes its findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

### A. Procedural Background

The Debtors filed a voluntary Chapter 13 petition on March 26, 2004. At the time they filed their petition, the Debtors filed some, but not all, of their Schedules. Specifically, they did not file Schedules A through C. Less than two months after filing their petition, the Debtors moved to convert their Chapter 13 case to a case under Chapter 11. Approximately one month later on June 16, 2004, the Court, in the absence of objections, granted the Debtors' Motion to Convert. Shortly after conversion of their case to Chapter 11, the United States Trustee filed a Motion to Convert Debtors' Chapter 11 Case to Chapter 7 or, in the Alternative, to Dismiss. Additionally, while the Debtors' Chapter 11 case was pending, Victor Voner filed a Motion for Relief from Stay to which the Debtors objected on grounds that Victor Voner is not a creditor and any proceeds from the sale of

the Florida condominium referenced in the Motion for Relief from Stay are assets of an entity know as Millennium Mechanical Concepts, Inc. ("Millennium"), not the Debtors.

On December 9, 2004, prior to a decision on the Motion for Relief from Stay, the Court converted the Debtors' Chapter 11 case to a case under Chapter 7. The Chapter 7 Trustee filed an objection to the Motion for Relief from Stay, and, on January 11, 2005, the Court heard the Motion. At the hearing, Victor Voner withdrew his Motion for Relief from Stay. Subsequently, the parties filed a Stipulation, which the Court approved, pursuant to which they agreed as follows:

> The funds held in escrow by Gary Fuchs, Esquire, of The Villages, Florida, [sic] in amount of $61,734.83 resulting from the pre-petition sale of the real estate at 3136 Burbank Lane, The Villages, Florida, will be held by the trustee, William G. Billingham, pending resolution of the dispute among all parties of their respective interests therein or further order of the court; [and] . . . Victor Voner will file an adversary proceeding to resolve the said dispute among all parties of their respective interests in the funds or further order of the court. . . .

On January 18, 2005, Victor Voner filed an adversary proceeding against the Chapter 7 Trustee. Pursuant to his Complaint Victor Voner seeks damages for breach of contract, plus interest and costs (Count I), as well as a declaratory judgment that he is entitled to all or substantially all of the $61,734.83 presently held in escrow (Count II).

On their Schedules, which they filed on December 9, 2004, the Debtors valued their residence located at 19 Fieldcrest Lane, E. Bridgewater, Massachusetts at $395,0000, subject to a mortgage held by CitiMortgage, Inc. in the sum of $204,235.00, liens held by Wells Fargo Bank in the sum of $39,223 and Rockland Trust Company ("Rockland") in the sum of $150,000. Additionally, they listed a 20% interest in Millennium to which they ascribed

3

no value. The Debtors did not list either Victor Voner or Mark Voner as creditors. Additionally, they did not list an ownership interest in real property in Florida on Schedule A or an interest in proceeds from the sale of real property in Florida on Schedule B.

B. <u>Factual Background</u>

On August 4, 2000, The Villages of Lake-Sumter, Inc. conveyed by Warranty Deed a condominium, described as Unit No. 33 at the Villages of Sumter, located at 3136 Burbank Lane, to Mark V. Voner and James J. Latini. Victor Voner, in his Complaint, alleged that Mark Voner and the Debtor agreed to share equally the expenses pertaining to the maintenance and operation of the property, which they rented to various third parties; that the Debtor failed to contribute his share of the expenses for the maintenance and operation of the property; that Mark Voner advanced monies for the maintenance and operation of the property and the Debtor failed to reimburse him; that Mark Voner and the Debtor agreed to sell the property in October of 2003; and that, on March 26, 2004, Mark Voner and the Debtor sold the property to Dahl W. Knaus and Lola D. Knaus as Trustees. Notably, the Debtors filed their Chapter 13 bankruptcy petition on March 26, 2004. As noted above, neither the property or the proceeds were listed on the Debtors' Schedules, although the Debtor's name appeared on the Warranty Deed.[1]

According to the Settlement Sheet attached to the Complaint, net proceeds from the sale due Mark Voner and the Debtor totaled $61,734.83. On February 20, 2004, prior to the

---

[1] Neither the Trustee nor any party in interest filed a complaint pursuant to 11 U.S.C. § 727(a) against the Debtor.

4

sale and while the property was still owned by Mark Voner and the Debtor, Mark Voner, executed a document which provided the following: "I, Mark V. Voner convey all financial interest and rights to reimbursement of monies advanced and/or recouped regarding said property to Victor D. Voner." The document also set forth the following: "Victor D. Voner has paid bills for the property in order for Mark V. Voner to maintain his credit standing."

Rockland, in various attachments to its Motion to Intervene, included a two-count Complaint against the Trustee and Victor Voner in which it outlined its lending relationship with Millennium, a relationship which resulted in state court litigation. According to Rockland, in May of 2001, over six months after Mark Voner and the Debtor purchased the Florida condominium, Rockland sent Mark Voner, as Chief Executive Officer of Millennium, a commitment letter approving Millennium's application for a $500,000 line of credit. On June 15, 2001, Millennium entered into a Standard Revolving Financing Agreement with Rockland with respect to a revolving line of credit in an amount not to exceed $500,000. Millennium executed a Note and Security Agreement which Rockland asserts it duly perfected. As further security for its loan, Rockland obtained guaranties secured by mortgages on their residences from Mark Voner, Donald G. Storck ("Storck"), and the Debtor.

According to Rockland, on July 29, 2003, about two months before Mark Voner and the Debtor agreed to sell the Florida condominium, Rockland sent Millennium notice of default and a demand for repayment of all amounts due and owing under its financing agreement. Pursuant to attempts to workout Millennium's financial difficulties, Mark

5

Voner and Storck refinanced their residences in December of 2003 and paid Rockland $170,000. In exchange, Rockland released its mortgages on their residences. Throughout the fall of 2003 and the spring of 2004, Rockland and Millennium engaged in discussions with respect to repayment of Millennium's loan, resulting in Millennium making some payments to Rockland. According to Rockland, as of May 5, 2004, Millennium owed it approximately $74,600 in principal.

On May 7, 2004, Millennium, Mark Voner and Storck filed a Complaint against Rockland in the Plymouth Superior Court, Department of the Trial Court, alleging breach of contract and violations of Mass. Gen. Laws ch. 93A. In their Complaint, they specifically alleged that Rockland was "more than adequately secured for the balance due and owing by virtue of the mortgage on the Debtors' residence." Rockland filed an Answer and Counterclaim. The litigation is pending.

In its Motion to Intervene, Rockland, which has not filed a Motion for Relief from Stay in the Debtors' bankruptcy case, seeks injunctive relief against the Chapter 7 Trustee restraining him from releasing the sale proceeds from the Florida condominium "until the Court has made a determination as to the parties' rights in the proceeds, so that Rockland's security interest is not injured any further." It also seeks avoidance, as a fraudulent transfer, of Mark Voner's assignment to Victor Voner of his "financial interest and rights to reimbursement of monies advanced and/or recouped," as well as a declaratory judgment that the sales proceeds of the Florida property are assets of Millennium.

**III. DISCUSSION**

While the facts of this case may be convoluted, the law is not. Florida law provides the following:

> The doctrine of the right of survivorship in cases of real estate and personal property held by joint tenants shall not prevail in this state; that is to say, except in cases of estates by entirety, a devise, transfer or conveyance heretofore or hereafter made to two or more shall create a tenancy in common, unless the instrument creating the estate shall expressly provide for the right of survivorship; and in cases of estates by entirety, the tenants, upon dissolution of marriage, shall become tenants in common.

Fla. Stat. Ch. § 689.15. Accordingly, Mark Voner and the Debtor owned the Florida condominium as tenants in common and did so until it was sold on March 26, 2004. The Debtor and Mark Voner, not Victor Voner, were identified as the sellers of the Florida condominium on the Settlement Statement attached as an exhibit to Victor Voner's Complaint. Thus, each is entitled to an equal share of the proceeds of the sale. *See* Biondo v. Powers, 743 So.2d 161 (Fla. Dist. Ct. App. 1999), In that case, the court stated the following:

> As a general rule, cotentants have a mutual obligation to pay charges upon the co-owned property. Thus, they are each ultimately liable for his or her proportionate share of the obligations or expenses of the property, consisting of mortgage payments, insurance, taxes, and necessary repairs. The equity of one of the parties should not be increased by expenditures made by another. Thus, upon partition, a cotenant paying obligations of the property is entitled to a credit from the proceeds of the sale for the other cotenant's proportionate share of those expenses.

743 So.2d at 164 (citations omitted, footnote omitted). The Florida court indicated that "[t]he exception to this [general] rule is where one cotenant has sole possession of property and is receiving all the profits therefrom." Id. n. 2. The court further indicated that although a cotenant may be entitled to contribution for excess payments made toward

7

obligations on the property, such payments do not increase a cotentant's equity in the property. Id.

Based upon the principles articulated by the Florida court, Mark Voner and the Debtor are each entitled to 50% of the proceeds from the sale of the property and Mark Voner has a right of contribution for any excess share of the expenses, a right of contribution which he assigned to his father, Victor Voner. *See* 11 U.S.C. § 541(a)(property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case.").

Mark Voner did not, by his words or his conduct, intend to convey his interest in the Florida condominium to his father and even had he done so it would not have resulted in an entitlement to more than 50% of the net proceeds. Rather, he conveyed his claim for contribution against the Debtor for reimbursement of the Debtor's share of expenses for the property which he paid.

Victor Voner alleged that the Debtor breached his contract with Mark Voner when he failed to pay his share of the expenses. Alternatively, he sought a declaration that as an assignee, he is entitled to all or substantially all of the escrow funds derived from the property. Victor Voner, however, failed to allege that he has more than an unsecured claim to property of the Debtors' bankruptcy estate, which includes the Debtor's share of the net proceeds from the sale of the condominium.

Florida law governing the attachment and enforceability of security interests provides:

8

> (1) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.
> (2) Except as otherwise provided in subsections (3) through (10), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>  (a) Value has been given;
>  (b) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>  (c) One of the following conditions is met: ...
>    4. The collateral is deposit accounts. . . . and the secured party has control under § 679.1041, § 679.1051, § 679.1061, or § 679.1071 pursuant to the debtors security agreement.

Fla. Stat. ch. § 679.2031. An escrow account is a deposit account. Brown v. Master Fin., Inc. (In re Brown), 311 B.R. 282 (Bankr. M.D. Fla. 2004). Victor Voner did not allege that he had control over the escrow account, which the Chapter 7 Trustee now holds. The Debtor owned 50% of the proceeds from the sale of the property as a tenant in common with Mark Voner at the commencement of the case, an ownership interest which the Debtors failed to list on Schedule B. Victor Voner has not alleged or set forth any reason for concluding that his claim for contribution is entitled to priority over the claims of the other creditors of the Debtors' bankruptcy estate.

In the assignment of the "rights to reimbursement of monies advanced" Mark Voner referred to "monies advanced and/or recouped regarding said property to Victor D. Voner." The reference to recoupment does not give rise to a secured or priority claim against the escrowed funds held by the Chapter 7 Trustee. In Holyoke Nursing Home, Inc. v. Health Care Fin. Admin. (In re Holyoke Nursing Home, Inc.), 273 B.R. 305 (Bankr. D. Mass. 2002), aff'd, 372 F.3d 1 (1st Cir. 2004), the court distinguished between setoff and

9

recoupment. It stated:

> Setoff is in the nature of a counterclaim, enabling a creditor to reduce the amount of a claim against it by an amount owed to the creditor on a mutual unrelated debt. Setoff is not a right created by the Bankruptcy Code, rather, it is a common law right preserved in bankruptcy cases under § 553, but subject to certain restrictions.
>
> On the other hand, "[r]ecoupment is the satisfaction of an obligation by the crediting against it of a reciprocal obligation arising from the *same transaction*, typically the same contract." Furthermore, the courts have construed the "same transaction requirement" narrowly.
>
> For the purpose of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved and that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from the 'same transactions.'" (citation omitted). Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.

273 B.R. at 311 (citations omitted). From the foregoing discussion, it is evident that neither concept is applicable to the undisputed facts of the instant case because Victor Voner did not allege in his complaint that either he or Mark Voner were obligated to the Debtor for any reason.

## III. CONCLUSION

In view of the foregoing, the Court finds that Victor Voner's Complaint fails to state a cause of action *against the Trustee* under Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012. Accordingly, the Court shall enter an order dismissing the above-captioned adversary proceeding, without prejudice to the filing of a proof of claim by Victor Voner with respect to the "rights to reimbursement of monies advanced" by Victor Voner. Because this Court finds that this adversary proceeding must be dismissed, Rockland's Motion to Intervene is moot. To the extent that Rockland seeks

10

to avoid the assignment of rights by Mark Voner to Victor Voner, it can amend its pending Counterclaim in the Plymouth Superior Court to seek the avoidance of the allegedly fraudulent conveyance, and, to the extent it seeks to prevent the Chapter 7 Trustee from distributing any monies to either Victor Voner or Mark Voner, it has remedies available under the Massachusetts Rules of Civil Procedure, including Rule 4.1 and 4.2.

By the Court,

Judge Joan N. Feeney
United States Bankruptcy Judge

Dated: June 15, 2005
cc: William G. Billingham, Esq., Robert Phillip Hilson, Esq., Jennifer L. Hertz, Esq.

11